Good morning. We are going to hear three cases today. We will start with the United States v. Iles. Good morning. My name is Anthony Kachor, and I represent the President of the teacher Iles. Before we start, I would like to reserve three minutes. The principal issue of this matter is that the District Court of Iles failed to consider a request for departure at Simpson. This court has established a two-step process for pursuing Simpson. And this court said that this step will be followed in a separate and sequential order. It will be done independently. But Counselor, there was not an objection below, so you agree we're reviewing for clean air, correct? Yes, yes, yes. And given that, what do we do with the statements that appear in your brief and in your reply? In the brief, you say that the District Court, quote, indicated that a departure had already been factored in by not applying a two-level enhancement for not a loss. And in your reply, that it is clear that the District Court was referencing Iles requested downward departure and not a variance. In light of those characterizations and what the District Court did, which indicated it wouldn't otherwise change its sentence, how do you get past with plain error that it affected substantial rights? Judge Prosser, what the District Court did was they viewed an enhancement as a departure between two separate things. When Judge Finch said that he already gave the two points reduction, that was a reference to Step 1, which is according to the sentence that you have to calculate offense level, including any enhancements. The government wanted a two-level enhancement. The government failed to prove to justify a two-level enhancement. Therefore, the District Court denied a two-level enhancement. Therefore, from 29 to 27, that was an enhancement. Now... How is that consistent with your statement in your briefing that the District Court was referencing Iles requested downward departure and not a variance? Judge, I will say that after reviewing the case and reviewing the transcripts and everything, it shows that the District Court combines Step 1 and Step 2. Another thing I will say is that the District Court, based on the President, was supposed to say that they have reviewed or made a consideration of the departure request, which it did not. Let's look at the joint appendix, page 1086. Didn't you actually concede that when the court said at line 24 there, as I look at the statute, I recognize that I have the authority to vary the sentence, but I declined to do so, having already in my initial calculation decreased it by two levels. Didn't you concede that the court meant to say authority to depart? Didn't you concede, didn't you make that concession that they meant to say authority to depart there? I do admit my error. What's that? I do admit my error. That was your error? No, your confessing error. All right. That's another concession. I do admit my error. But, Judge, what I'm saying is that, as I said in the very brief, the judgment was issued quickly and succinctly and without any forgery. It's fine. I went back and had a chance to review the transcript. That's why I didn't notice that I made a procedural error. Saying we agree with you that it was procedural error, but on a plain error review, you still have to persuade us that substantial rights were affected. That is that there's substantial reason to think that the district court here on resentencing would come to a different result. But what are you pointing to? What basis do you have, given that these issues, the defense that duress origin was already rejected by the jury? The motion was clearly in front of the district court, was raised both in papers and in argument and sentencing. And in your own acknowledgment, although the district court said variance, it appears it meant to say departure. How would it make any difference, even if the acceptor was error here, to send it back for resentencing? First of all, as the rule says, it is a two-step process. The court failed to indicate on the record that because the evidence was considered and reported, I can say it's not granted. The district court said that I already gave a two-point deduction, which was an enhancement that's different from a departure. I have been a district judge, and I recall sitting on the bench sentencing, and sometimes seats go around you. Excuse me, very quickly. For that reason, this court has said that often there are no magic words, there's no magic formula you have to follow. It becomes clear from what occurred in the courtroom that the judge, although the exact words weren't used, and perhaps the most direct word wasn't used, that the judge did consider the request for departure, and in the sentence given, denied it. Isn't that also consistent with their circuit precedent? What I brought, the judge didn't say that I considered the departure, sorry, the departure for coercion. The judge just said that I already granted... I already granted a lessening of the sentence, and I'm not going to grant any more. Yes, ma'am. And doesn't that implicitly say I'm denied the request for departure? I would say no, Judge, because the enhancement is different from a departure. Yeah, but you know when you're a district judge sitting up there, sometimes you can't remember which is an... sometimes when you're a public judge, too, which is an enhancement and which is a departure, and how they come in the order. And you're trying to explain to the defendant in the district court that there's... you recognize there's a request for departure, but you've already lessened the penalty, and you don't think it's appropriate to lessen it, to lower it any further. The judge... I said, um, judges do make... may make arrests, so do attorneys, but the judge did not say, this is my ruling on a record and motion for the term of departure. The judge just said, I already... I'm sorry. ...reduced the amount of enhancement, which was an enhancement. It's supposed to be done separately, not sequentially. If you make a ruling on the offense level to limit the enhancement, then the next level, you consider motions for departure. Counsel, I think we understand your argument on that issue. With your remaining time, would you like to address the suppression issue? Yes, Judge. I trialed the district court. I was able to suppress the evidence. Ms. Adams was, for all intents and purposes, she was in custody. What was that? Say that again. For all intents and purposes, Ms. Adams was in custody before she gave the... But why was she in custody? Tell us what your argument is that she was in custody. There's a recent case from the U.S. Supreme Court, Michigan v. Howes, and I was always surprised by the outcome of that case. I figured if Mr. Howes wasn't in custody, it would be pretty hard to be in custody when you look at the totality of the circumstances. Exactly, Judge. Look at the totality of the circumstances. Ms. Adams was stopped by the police officers. She was told to go to the railroad station where she was taken to by the Department of Justice. She was there from before 5 o'clock until 9 o'clock. She signed a waiver at 7.59. So before that, between before 5 and 7.59, she wasn't in custody. She wasn't free to leave. Now, isn't there a dispute? The government claims that she was not questioned for more than 45 minutes. Yes, Judge Rush. Well, if you look at the record, the waiver was signed at 7.59. The videotape ended at 9.09 p.m. So it was an hour and 10 minutes. That's more than 45 minutes. Then, in consideration that Ms. Adams was carried or told to leave before 5 o'clock, so she was in custody before 5. But didn't they tell her she was free to leave? The record? I mean, they asked her, they invited her to come to the police station. And she drove to the police station by herself. And then her mother and her stepfather arrived at the police station. Did they ever tell her that she wasn't free to leave? I think they told her initially, they invited her, you can leave. Didn't she meet with her mother? Excuse me, Judge Rush? During this period of time, wasn't she allowed to meet with her mother and talk with her mother? Briefly, but Judge Rush, while she was there, she was detained. And you have to look at Ms. Adams' circumstances, her mental state. To her, she was detained, she wasn't free to leave. She had to stay there and answer their questions. Was his detention a subjective state or an objective state? Judge Rush, I'll say both. Not to be ridiculous, but I'll say, to Ms. Adams, she was detained. She couldn't tell the police officer, oh, I don't want to go to the station. She was barred. When she was at the station, even though the door was open, or the door was unlocked, she couldn't just get up and say, I'm leaving. She wasn't told, Ms. Adams wasn't told. Ms. Adams was told that you need to get an attorney. You're free to leave. You can leave. You can go, but can you just answer this question? It wasn't until 759, that's when Ms. Adams signed the waiver. Thank you, counsel. We'll hear from you again in a moment. Further government, Ms. Williams-Henry? May it please the Court, Your Honor. I'm Ronald Williams-Henry on behalf of the United States. The district court did not commit any errors in this case, as before this panel. With respect to the issue of custody, the court considers several factors when determining whether or not the defendant is in custody. With respect to the custody issue, the court looks at several factors to determine whether or not a defendant is in custody. Those factors consist of the following, the location of the questioning, what the officers knew concerning the suspect's culpability,  Here, don't we have many of those factors satisfied? After all, this was a station house interrogation, and we've said those should be scrutinized with special care. Correct. And the detective who was admitted never told her that she was free to leave. In fact, he suspected her of being involved, and he told her that he saw her on the surveillance video. Correct. Aren't those all circumstances that create a kind of coercive atmosphere that would lead a reasonable person to conclude they were not free to leave? They would be, Your Honor. But the court has to look at the totality of the circumstances, not one factor is dispositive, which the district court did in this case. The district court looked at the several factors and applied the facts to those particular factors in this case. For instance, Judge, with respect to the voluntariness of the questioning, the court found that the defendant went down there on her own free will. When Detective Cruz was caught at the scene, Let me ask you about that, Eric, going on her own free will. I find it, of course, this is a small island in relation to the scope of things, particularly to the mainland, they knew this car. I mean, there was nothing unusual about this car, but they saw the car, and they saw Miss Isles in the car. I mean, it seems to me that the knowledge that everybody has about the residents here makes it a special circumstance. I mean, they knew this car, they knew who this person was, they had seen her on the video, and they told her to come to the police station. And she knew she couldn't run and hide, apparently, because she was known, her car was known. That's correct, Your Honor. However, the district court reflects that once Detective Cruz got to her vehicle, he introduced himself and asked her to come down to the station. And he didn't know if she would follow or not, and she did. Now, the court looked at those circumstances and determined that the defendant was unescorted. Cruz left, he didn't know whether she was coming or not. As a matter of fact, when Cruz was in the station, he mentioned to the detective that his partner, during the interview, that a female may be coming. So he wasn't sure that she would come or not. The defendant was free to go or not. You keep pointing us to the district court's balancing of these factors. I'm sorry? You are pointing us back to the district court's weighing of these different factors. But the question of whether someone is in custody is a legal question. Aren't we reviewing that de novo? The legal question, yes, but for the factual issues, the court has to make a clear error. But yes, the legal questions are de novo. So taking account of the facts and the number of circumstances that weigh in favor of custody, couldn't we come to a different conclusion as to whether the defendant was in custody? But this suppression issue deals with the facts, Your Honor. And if the district courts are confident of facts, that there's displosive in the record in total, then the court of appeals may not be first, even though had this court been sitting in that case, it would weigh the evidence differently. So with respect to the facts, it's clear error. It's a hybrid. The district court judge was there to witness, to the media of the witnesses, to hear the testimony and to decide things. So this clear error sound with respect to the facts is a hybrid, Your Honor. And with respect to the district court finding the defendant not in custody, there was no error. And we'll ask that the judgment with respect to the suppression be affirmed. Suppose that we felt that she was in custody and that the statement should be suppressed. Was there enough other evidence in the record to convict her, to uphold the jury verdict? If the court is asking if the defendant did not give the statement, would there be a response? If we found the statement was not admissible, was there enough other evidence to support the jury verdict? The court had the surveillance videos that showed the defendant in the area at the time of the robbery. So there goes back, Your Honor. Was there an identification? An identification was made from the store owner.  The store owner went into the store for the first time. She walked around. They asked her if she needed help. And she said she didn't need any help, so she left. And then when she came back and they buzzed her in, she held the door open and the store owner identified her as that person. Yes. Did he identify her in the courtroom or identify her in the video? He identified her in the courtroom. Even if we concluded that she was in custody, I take it the government is also arguing that there would not be a secret violation. Absolutely not, Judge. Not in the states. Can you address that issue? Because given the way we think of what constitutes an incriminating statement, for example, if someone invokes the Fifth in response to a grand jury scene, as long as it's evidence that any chain of evidence could lead to other incrimination, we take that as satisfying the threshold of what constitutes an incriminating statement. Why wouldn't we apply that here so that even her initial statement, acknowledging that she was present, would constitute an incriminating statement for purposes of a pre-Miranda admission and thus a CBRT violation if she wasn't in custody? Well, in CBRT, Your Honor, the defendant was arrested initially. She was arrested and the officer spoke to her and she gave the incriminating statement. Then they Mirandized her and she repeated the incriminating statement. Those facts are not present in this case. In this case, when Detective Cruz first talked to the appellant, she denied having anything to do with it, but she acknowledged that she was present. Why isn't that in the chain of inferences, the chain of pieces of evidence that could constitute a full confession, why wouldn't that be enough to trigger the same concerns that animate the CBRT? Because if she said she was present, it doesn't say the part that she played. And we know the part that she played was to hold the door open for those individuals. So just saying that I was present is not incriminating in other states. She could just have been there by happenstance. We know that's not the case. She could have, but any time a suspect acknowledges that they were present at the scene of the crime, isn't that on its face incriminating? Well, in this case, the appellant said that she was present and that some individuals came and they left. There's no indication of the role that she played. Does CBRT require that the entire confession be given before Miranda warnings, or only that some incriminating statement be made? The appellant opens the door to giving a further statement after Miranda's warning. It requires that an incriminating statement be made. And why isn't acknowledging a suspect's presence at the scene of a crime incriminating? Because acknowledging the presence without more is... I'm not sure that that rises to the level of incrimination. As I said, it could just be happenstance that... It could have been happenstance that... Had Detective Cruz already informed her that she was on the surveillance video of the store? When she was in the station, yes. He had told her why he wanted to talk to her. For instance, he had shown up on the video. Correct. On the sentencing question for a moment, you argue in your brief that a variance was not even on the table in this case. But yet, how should we interpret your lengthy argument in your sentencing memorandum that a 35-53 variance was not warranted? That seems contrary to your argument here. Sorry, can you repeat your question? Well, was there a variance on the table or was there not a variance? No, there was no variance on the table. Well, why did you have your lengthy argument in your sentencing memo on arguing against a variance if it wasn't on the table? That is the sentencing memo that is required to be filed. That's what? That is the sentencing memo that is required to be filed in our district. So it was boilerplate maybe and not relevant? Yes, Your Honor. Required to be filed by whom? That is our stock sentencing memo that's filed with the court. Okay. So in essence, your argument is that the variance was never in front of the court, that the debate was always about a departure, and as I read in the one section of the appendix, the court just misspoke when it said vary instead of depart. Correct, Your Honor, correct. If we were to take that rule, what would that do to our precedent that says a district court's discussion at the variance stage does not necessarily shed light on what would be done at the departure stage and the need to consider all the 3553A factors is frustrated when a sentencing court fails to express their rule on the merits of a departure motion? Well, Your Honor, in this case, the district court's judge did not specifically say, I'm inclined to depart. But if the court looks at the steps at sentencing, the district court did engage in all three steps at the sentencing. The court did calculate the value. And it was why the document was in its allocation, that's why the district court said that it doesn't agree with the two-level enhancement. And so we already knew that, we already acknowledged that the sentencing guideline range, the level was 29. And with him stating that he did not agree with the two-level enhancement, that brought it down to 27. So the court did engage in the calculation of the guidelines. But the court did not rule, at least expressly, on the departure motion. Isn't that a problem? I mean, your argument seems to be, yes, that a court acknowledged its authority to vary. But our case law says that acknowledging authority to vary does not answer the question of whether a district court would have departed if it recognized the motion or recognized its authority to depart. How can we be assured here that the district court would have imposed the same sentence, if not for this error, when the district court didn't even acknowledge the motion? Well, Your Honor, the district court had the sentencing guideline from the appellant and had the government's sentencing guideline where it opposed the departure that was requested. Doesn't that make the error in the court in not addressing it all the more plain? But our position is that the court did address it. The court stated that he was aware of his authority to vary, but he declined to do so. The sentencing guidelines were before the court. So the government's position is that while he did not say, I am going to deny your motion to depart, the fact that he was aware and declined to depart is him basically addressing the departure motion, Your Honor. Great. I think I understand your argument. Thank you very much. I will ask that the court confirm the judgment of the district court. Thank you, Your Honor. Thank you, and we'll hear back from the district court. Mr. Couture, could we start with the question of the Siebert violation? That is, how is it an incriminating statement to acknowledge the presence when Officer Cruz had already advised her that they saw her on video, they knew she was present? Can you repeat that question again? Yes. For the Siebert violation, when she faced her suppression argument, she needed to make an incriminating statement before she was given Miranda warnings. The incriminating statement she appears to have made, if it was one, was simply the acknowledgment that she was present. But since the officers had advised her that they saw her on video and were asking her about her presence, why would it be incriminating to acknowledge that she was in fact present? It's not incriminating, Judge Cox. As Judge Fisher said when she was talking about the video, just because she was in the store and she was present doesn't mean that she was a part of the robbery. She was present. If there were a lot of shoppers there, would it also be an incident? Would Judge Cruz say that they incriminated themselves? Your position is that her statement acknowledging that she was present was not an incriminating statement? It was not. For the purpose, she was there. Judge, Detective Cruz stopped her and stopped her. Two police officers stopped her with missiles. Detective Cruz came and said, follow me, come to the Rainbow Station. As Judge Fisher said this morning, there's no way she had to go to the Rainbow Station. I'm not asking about whether she was in custody or not. I'm asking about whether the statements that were made were formal Miranda warnings, whether you're contending that was an incriminating statement. Is it your position that her acknowledgement that she was present, her statement at the station house that she was present, was not incriminating? It's not incriminating. Not incriminating. Is it your position that that was not incriminating? Yes, it is. Yes, Judge. If that's so, how is there any Siebert violation? Doesn't Siebert require an incriminating statement before Miranda warnings with a confession then repeated afterwards? Yes, Judge. You said it was incriminating as a Siebert. It was not incriminating. I didn't mean to hurt you. But, Judge, the statement that she made, the statement that she was there, if it wasn't incriminating, the statement, the condom, sorry. You can complete your answer. The statement that was made for Ms. Adams before this repetition act, before she made the video confession, Ms. Adams was, she didn't know what she was doing. She did not knowingly or voluntarily know what she was saying. She didn't. The reason she went to the police station, she went to the police station because we think you are a suspect. I think we understand the custody argument. Do you have any questions? Then we'll thank both counsel for their argument today. And we'll take a piece of your advisement.